UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jay Paul Olson,

        Plaintiff,

vs.

Sherburne County; Angela Knutson; Brian Frank; John Olson; Jeremy Coolidge; Troy Halvorson; and John Doe Nos. 1-5, all in their individual capacities,

        Defendants.

Case No. 07-4757 JNE/RLE

COMPLAINT

JURY TRIAL DEMANDED
UNDER FRCP 38(b)

---

For his Complaint, Plaintiff Jay Paul Olson ("Olson") states and alleges as follows:

1. This is an action for money damages arising out of the unnecessary and prolonged pain and suffering and dramatically increased risk of death together with severe and permanent injuries Olson suffered on April 25, 2006, while Olson was incarcerated or held at the Sherburne County Jail ("Jail").

2. The deliberate indifference of Sherburne County and its Jail officials and employees proximately caused Olson's unnecessary and prolonged pain and suffering, dramatically increased his risk of death, caused the injuries themselves, violated his federal civil rights, and constitutes tortious behavior on behalf of all defendants, all while acting under color of state law.

3. Olson brings this action pursuant to 42 U.S.C. §§1983 and 1988, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§1331 and 1343(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this cause of action.

4. Olson was at all times material herein a citizen of the United States and a resident of the State of Minnesota. He is forty-four years old, with a pertinent history of severe asthma. At the relevant time, Olson was both a prisoner and pre-trial detainee of the Jail.

SCANNED
DEC 0 4 2007
U.S. DISTRICT COURT MPLS

5. Defendant Sherburne County is a "public corporation" which can be sued under Minnesota Statute §373.01(1).

6. Defendant Angela Knutson ("Knutson") was the Jail Administrator and supervisor of the Jail where Olson was incarcerated and whose identity is unknown to Olson at present.

7. Defendant Brian Frank ("Frank") was the Assistant Jail Administrator and a supervisor of the Jail where Olson was incarcerated.

8. Defendant John Olson ("Capt. Olson") was a Captain and a supervisor at the Jail where Olson was incarcerated.

9. Defendant Jeremy Coolidge ("Sgt. Coolidge") was a Sergeant and supervisor assigned to the Jail where Olson was incarcerated.

10. Defendant Troy Halvorson ("Halvorson") was a correctional officer assigned to the Jail where Olson was incarcerated.

11. Defendant John Doe No. 1 ("Doe No. 1") was the doctor assigned to the Jail where Olson was incarcerated and whose identity is unknown to Olson at present.

12. Defendant John Does No. 2 ("Doe No. 2") was a Registered Nurse at the Jail where Olson was incarcerated and whose identity is unknown to Olson at present.

13. Defendants John Doe Nos. 3-5 ("Doe Nos. 3-5") were supervisors at the Jail where Olson was incarcerated and whose identities are unknown to Olson at the present time.

14. In November 2004, Olson was arrested on DWI charges. In January 2005, Olson was convicted by plea of guilty and sentenced to serve 150 days in a staggered sentence with probation.

15. Olson's staggered sentence meant that he was to serve 60 days in the Jail before going free for several months. He then would serve another stint of 50 days before being free for a

time and then serve his final stint of 40 days. He only served 60 days in 2005, thus leaving additional time to be served in 2006.

16. Olson was to serve all of his time in the Jail, and during his first stay of the staggered sentence, jail staff were specifically alerted to Olson's severe asthma and need for Prednisone.

17. Around the year 2002, Olson developed asthma from a virus. On at least four occasions he suffered such severe attacks that he was taken by ambulance to the hospital.

18. Olson's family doctor referred him to a specialist, Dr. Amit Chandra, who prescribed Prednisone for Olson, which alleviated his symptoms. Dr. Chandra directed Olson to take 10 mg of Prednisone daily, and to bump this up to 40mg when he felt a severe attack coming on. This system helped Olson contain his severe asthma attacks as he usually has plenty of notice of a severe attack coming on and is able to head it off with Prednisone.

19. The Jail's medical staff had discussed Olson's need for Prednisone with Dr. Chandra, evidenced by Jail Clinic Notes, a true and correct copy of which are attached hereto as Exhibit A and incorporated herein by reference.

20. Upon information and belief, Olson suffered a severe asthma attack in 2005 while incarcerated in the Jail and a Jail doctor gave Olson 60 mg of Prednisone daily for five days, which cleared up his symptoms and resolved the severe attack.

21. In 2006, during Olson's time at the Jail, including a stay from March 14 to April 1, 2006, Olson had numerous respiratory attacks, and was eventually allowed to keep his asthma inhaler on him at all times. Between March 14 and April 1, Olson was seen in the clinic more than 10 times for respiratory problems. (Id.)

22. Olson received frequent nebulizer treatments at the Jail clinic, and 10 mg of Prednisone daily, as evidenced by Physicians Orders, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference. (See also Ex. A, Jail Clinic Notes.)

23. On April 12, 2006, Olson was arrested on a probation violation and for DWI. He was held in the Jail without bail prior to his trial.

24. Olson reported to the Jail clinic for treatment on April 21 and April 22, 2006, for wheeziness in his lungs and/or shortness of breath. (See Ex. A, Jail Clinic Notes.)

25. Olson was given nebulizer treatments, which clinic staff noted, gave "good relief." (Id.)

26. On April 23, 2006, Olson had a severe asthma attack, and requested an increased dosage of Prednisone, but his request was unreasonably denied. He was given a nebulizer treatment and oxygen, and his symptoms only somewhat subsided.

27. On April 24, 2006, Olson again reported to the Jail Clinic, where he was noted to have wheezing sounds bilaterally in his lungs. A nebulizer treatment "somewhat diminished" the sounds, but they were still audible, so a registered nurse (Doe No. 2) was notified.

28. Throughout April 24, 2006, Olson felt that he had still not recovered from the severe attack he suffered on April 23, 2006.

29. In the early morning hours of April 25, 2006, Olson's condition deteriorated to the point where he could hardly breath at all. Olson pressed his intercom button for assistance.

30. Olson was very short of breath and was having extreme difficulty breathing.

31. Halvorson arrived at Olson's cell, and Olson requested Oxygen and Prednisone.

32. Halvorson left Olson to obtain oxygen and reported Olson's request for prednisone to Sgt. Coolidge.

33. Sgt. Coolidge instructed Halvorson to proceed with the oxygen and stated he would go to Olson's cell to assist.

34. Sgt. Coolidge arrived on the scene and asked Olson if he wanted a nebulizer treatment.

4

35. Olson stated that he did not want a nebulizer treatment because it was virtually the same medication as was in his inhaler. Additionally, he would have to walk to the clinic to get a nebulizer treatment, and he could not walk by this point. Rather, Olson again requested Prednisone, the only medication that provides relief from a severe attack.

36. Neither Coolidge nor Halvorson provided Olson with any Prednisone, despite Olson's previous severe asthma attack in the Jail where 60 mg of prednisone daily for several days resolved his attack. Olson then requested they call 911 for him, but this request was ignored. Rather, Coolidge and Halvorson kept Olson on oxygen, and had to supply him with a second tank after the first tank ran out.

37. Upon information and belief, Olson's condition did not improve while he was on oxygen, and in fact he lost consciousness, at which point Coolidge requested an ambulance.

38. The ambulance arrived at approximately 3:57 a.m. and Coolidge escorted the paramedics to Olson's cell.

39. The paramedics found Olson in his cell in "severe respiratory distress" too weak to even lift his head or make eye contact, according to the Elk River Fire and Ambulance Patient Care Report, a true and correct copy of which is attached hereto as Exhibit C and incorporated herein by reference. (See Id. at p. 4.)

40. The paramedics noted that Olson was in "imminent respiratory arrest state" and that his skin was pale and cool. (Id.)

41. Halvorson and Aaron Valley, another correctional officer who had arrived at the scene to assist, helped the paramedics get Olson onto a stretcher and down to the ambulance.

42. Olson was not able to move air, so he had to be intubated in the field by the ambulance paramedics. It took the paramedics three tries to intubate Olson. (Id.)

43.     The ambulance left the Jail at approximately 4:45 a.m. Due to the severity of Olson's condition, the ambulance changed its destination to Mercy Hospital, which was closer than the ambulance's original destination.

44.     Olson presented to Mercy Hospital in "respiratory failure triggered by allergens in his jail cell and inability to receive timely medical care," according to the 5-1-06 Discharge Summary, a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by reference. (Id. at p. 1.)

45.     Olson was brought to the emergency room and then admitted to the intensive care unit and treated aggressively with IV steroids, oxygen, nebulizers, and metered dose inhalers. (Id., p. 1-2.)

46.     Olson was ventilated for about 18 hours before he could finally be extubated, according to the 4-26-06 Pulmonary Consultation, a true and correct copy of which is attached hereto as Exhibit E and incorporated herein by reference. (Id. at p. 2.)

47.     The pulmonary consultant characterized Olson's asthma attack as a "near-fatal asthma episode." (Id., p. 4) Additionally, this doctor noted that jail staff reportedly found Olson "in extremis," or near death. (Id.)

48.     Olson's severe asthma attack resulted in elevated cardiac enzymes, likely due to myocardial strain according to a 4/25/06 Cardiology Consultation, a true and correct copy of which is attached hereto as Exhibit F and incorporated herein by reference. (See id., p. 2-3.) As a result, Olson underwent invasive and dangerous testing, including an angiograph.

49.     Olson was stable for discharge on April 29, 2006, but due to the fact that he had been having trouble and shortness of breath since he was incarcerated, and because "a safe environment for him could not be guarantee[d] over the weekend," the hospital kept Olson over the weekend. (Ex. D, Discharge Summary, p. 2.)

50. Olson's discharge summary specified, "From a medical standpoint, it is imperative that [Olson] be kept in an environment where he could get 24-hour emergency care and have an area that is free of allergens that would trigger his asthma." (Id.)

51. Olson was discharged on 40 mg of Prednisone daily for three days, then 20 mg daily for 3 days, then 10 mg daily with further tapering as recommended by Olson's pulmonologist. (Id.)

52. Similar to the conclusion in the discharge summary, Olson's treating respiratory doctor, after reviewing Mercy Hospital's records, attributed Olson's hospitalization to "not [being] given adequate amounts of his prednisone in jail and his breathing suddenly became worse," according to a Nov. 2, 2006 Clinic Note from Respiratory Consultants, P.A., a true and correct copy of which is attached hereto as Exhibit G and incorporated herein by reference.

53. Upon information and belief, Sherburne County has not paid any of the medical expenses for Olson's emergency treatment and stay at Mercy Hospital, which totaled over $50,000.

54. Defendants unreasonably and with deliberate indifference to Olson's obvious and serious medical needs failed to provide proper and timely care for Olson as required by federal common law. Defendants denied Olson appropriate care and medication despite his obvious serious pain and suffering, grave medical symptoms, and serious medical needs, which dramatically increased his risk of death.

55. Defendants unreasonably and with deliberate indifference failed to properly staff and supervise the Jail where Olson was detained, failed and refused to provide appropriate and timely medical care, and failed and refused to medically intervene in an obviously serious and life-threatening medical emergency and, as a result, failed to uphold their constitutional duties to Olson and caused him unnecessary and prolonged physical pain and suffering and emotional anguish and suffering and drastically increased his risk of death.

56. Plaintiff demands a jury trial as to all issues of fact herein.

## COUNT ONE

## VIOLATIONS OF EIGHTH AND FOURTEENTH AMENDMENT RIGHTS

57. Plaintiff realleges the allegations contained in paragraphs 1 through 56 herein against all individual defendants.

58. Defendants had a duty to provide for the safety and general well-being of Olson, a pre-trial detainee and inmate under their care and control.

59. Defendants, and all of them, under color of state law, acted with deliberate indifference to Olson's obvious and serious medical needs in violation of the Eighth and/or Fourteenth Amendment to the United States Constitution.

60. Defendants, and all of them, under color of state law, knew of and disregarded an excessive risk to Olson's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendment to the United States Constitution.

61. Defendants subjected Olson to these deprivations of his rights either maliciously or by acting with a reckless disregard for whether Olson's rights would be violated by their actions.

62. As a direct and proximate result of the acts and omissions of all of the defendants, Olson suffered unnecessary and prolonged great physical pain and suffering and mental anguish and suffering and was thereby damaged in an amount as yet to be determined, but believed to be well in excess of Seventy-five Thousand ($75,000) Dollars.

63. Plaintiff is entitled to punitive damages in an amount exceeding Seventy-five Thousand ($75,000) Dollars.

64. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

COUNT TWO

CIVIL RIGHTS VIOLATIONS BY SUPERVISORY DEFENDANTS ANGELA KNUTSON, BRIAN FRANK, JOHN OLSON, JEREMY COOLIDGE, JOHN DOE NOS. 3-5

65. Plaintiff realleges the allegations contained in paragraphs 1 through 64 herein against defendants Knutson, Frank, Captain Olson, Sergeant Coolidge, and John Does Nos. 3-5.

66. Upon information and belief, on and before April 25, 2006, defendants Knutson, Frank, Captain Olson, Sergeant Coolidge, and John Does Nos. 3-5, as supervisors at the Jail, with reckless or callous indifference to the rights of inmates and detainees, failed to properly instruct, supervise and train corrections officers, including defendant Halvorson.

67. Defendants Knutson, Frank, Captain Olson, Sergeant Coolidge, and John Does Nos. 3-5's inaction amounts to reckless disregard, deliberate indifference to or tacit authorization of constitutional violations.

68. As a direct and proximate result of the acts and omissions of defendants Knutson, Frank, Captain Olson, Sergeant Coolidge, and John Does Nos. 3-5, Olson suffered unnecessary great physical pain and suffering and mental anguish and suffering and was thereby damaged in an amount as yet to be determined, but believed to be well in excess of Seventy-five Thousand ($75,000) Dollars.

69. Plaintiff is entitled to punitive damages in an amount exceeding Seventy-five Thousand ($75,000) Dollars.

70. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT THREE

### CIVIL RIGHTS VIOLATIONS— FAILURE TO TRAIN UNDER CANTON V. HARRIS— BY DEFENDANT SHERBURNE COUNTY

71. Plaintiff realleges the allegations contained in paragraphs 1 through 70 herein against defendant Sherburne County.

72. Before April 25, 2006, Sherburne County with deliberate indifference to the rights of inmates and detainees at the Jail failed to properly train officers at the Jail and failed to adopt, implement or require adherence to appropriate policies to provide timely and appropriate care to inmates and detainees when responding to obvious and serious medical needs of inmates and detainees.

73. Defendant Sherburne County, by such conduct, demonstrated a deliberate indifference to and a protracted failure to care for the safety of a detainee with an obvious and serious medical need.

74. As a direct and proximate result of the aforesaid acts and omissions and failure to train of defendant Sherburne County, defendant Sherburne County violated Olson's civil rights, resulting in Olson suffering unnecessary and prolonged great physical pain and suffering and mental anguish and suffering and thereby damaging Olson in an amount as yet to be determined, but believed to be well in excess of Seventy-five Thousand ($75,000) Dollars.

75. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT FOUR

### CIVIL RIGHTS VIOLATIONS— DELIBERATE INDIFFERENCE UNDER MONELL— BY DEFENDANT SHERBURNE COUNTY

76. Plaintiff realleges the allegations contained in paragraphs 1 through 75 herein against defendant Sherburne County.

77. Before April 25, 2006, defendant Sherburne County, with deliberate indifference to the rights of inmates and detainees at the Jail, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its Jail officials, officers and employees, including all defendants herein, of failing to respond to and address the obvious serious medical needs of inmates and detainees, and failing to provide prompt medical emergency care.

78. As a direct and proximate result of the aforesaid acts and omissions, systematic flaws, policies and customs of defendant Sherburne County, defendant Sherburne County violated Olson's civil rights, resulting in Olson suffering unnecessary and prolonged great physical pain and suffering and mental anguish and suffering and thereby damaging Olson in an amount as yet to be determined, but believed to be well in excess of Seventy-five Thousand ($75,000) Dollars.

79. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT FIVE

## FOURTH AMENDMENT

80. Plaintiff realleges the allegations contained in paragraphs 1-79 herein against all individual defendants.

81. By the actions described above, defendants, under color of state law, violated and deprived Olson of his civil rights by subjecting him to an unreasonable seizure in violation of the Fourth Amendment.

82. Defendants subjected Olson to this deprivation either maliciously or by acting with reckless disregard for whether Olson's constitutional rights would be violated by their actions.

83. As a direct and proximate result of the Fourth Amendment violation by the defendants, Olson suffered unnecessary and prolonged pain and suffering and dramatically increased risk of death together with severe and permanent injuries and was thereby damaged in an amount in

excess of Seventy-five Thousand ($75,000) Dollars.

84. Plaintiff is entitled to punitive damages in an amount exceeding Seventy-five Thousand ($75,000) Dollars.

85. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

## COUNT SIX

## STATE LAW NEGLIGENCE

86. Plaintiff realleges the allegations contained in paragraphs 1 through 85 herein against all defendants.

87. Defendants had a duty to protect Olson from harm.

88. Plaintiff's damages were directly caused by the negligence of all defendants including, but not limited to the following: failure to establish or execute appropriate procedures for preventing serious malfunctions in the administration of justice; failure to establish or execute appropriate procedures for the emergency care of inmates and detainees; failure to provide appropriate and immediate treatment for Olson despite his obvious and serious medical need; and failure to properly train and supervise jail staff members, including all defendants herein.

89. As a direct result of the aforesaid acts and omissions of all defendants, Olson suffered great physical pain and suffering and mental anguish and suffering and was thereby damaged in an amount exceeding Fifty-Thousand ($50,000) Dollars.

WHEREFORE, plaintiff Jay Paul Olson prays for judgment against defendants as follows:

1. As to Count One, a money judgment against all of the individual defendants for compensatory damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars and punitive damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

2. As to Count Two, a money judgment against defendants Angela Knutson, Brian Frank, John Olson, Jeremy Coolidge, and John Does Nos. 3-5 for compensatory damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars and punitive damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars, together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

3. As to Count Three, a money judgment against defendant Sherburne County for compensatory damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars, together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

4. As to Count Four, a money judgment against defendant Sherburne County for compensatory damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

5. As to Count Five, a money judgment against all of the individual defendants for compensatory damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars and punitive damages in an amount in excess of Seventy-five Thousand ($75,000) Dollars, together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

6. As to Count Six, a money judgment against all of the defendants for compensatory and punitive damages in an amount in excess of Fifty Thousand ($50,000) Dollars, together with prejudgment interest, costs and disbursements;

7. For an order mandating changes in the policies and procedures of the Sherburne County Jail with respect to, among other things, training of correctional and medical staff and increased inmate supervision; and

8. For such other and further relief as this Court may deem just and equitable.

DATED: __12/4/__, 2007                    FLYNN, GASKINS & BENNETT, L.L.P.

By: ___/s/ Robert Bennett___
Robert Bennett (6713)
Ryan O. Vettleson (312915)
*Attorneys for Plaintiff*
Suite 2900
333 South Seventh Street
Minneapolis, MN 55402
(612) 333-9500

rb/17830/complaint

14