UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jay Paul Olson,

   Plaintiff,

v.
                     Civil No. 07-4757 (JNE/JJG)
                     ORDER

Sherburne County, Angela Knutson, Brian
Frank, John Olson, Jeremy Coolidge, Troy
Halvorson, Maryanne Welsh, Mark
Herrmann, Rose Lindberg-Maingi, Tricia
Nesser, and Gregory Schoen,

   Defendants.

---

Robert Bennett, Esq., and Ryan O. Vettleson, Esq., Flynn, Gaskins & Bennett, L.L.P., appeared for Plaintiff Jay Paul Olson.

William J. Everett, Esq., and Daniel P. Kurtz, Esq., Everett & Vanderwiel, PLLP, appeared for Defendants Sherburne County, Angela Knutson, Brian Frank, John Olson, Jeremy Coolidge, and Troy Halvorson.

Defendants Maryanne Welsh, Mark Herrmann, Rose Lindberg-Maingi, Tricia Nesser, and Gregory Schoen did not appear.

---

  Plaintiff Jay Paul Olson brings this action against Sherburne County, as well as Angela Knutson, Brian Frank, John Olson, Jeremy Coolidge, Troy Halvorson, Maryanne Welsh, Mark Herrmann, Rose Lindberg-Maingi, Tricia Nesser, and Gregory Schoen in their individual capacities. Plaintiff suffered two asthma attacks while he was being held in the Sherburne County Jail in April 2006, and he claims that Defendants' responses to his asthma attacks were inadequate. He asserts claims under 42 U.S.C. § 1983 (2006) for violations of his Eighth Amendment[1] rights and under state law for negligence. The case is before the Court on the

---

[1]  It is not clear whether, on April 21 and 25, 2006, Plaintiff was being detained as an inmate or as a pretrial detainee. The parties agree that the Eighth Amendment deliberate indifference standard is appropriate. Because the standards is the same in either case, *see Kahle*

1

motion for summary judgment of Defendants Sherburne County, Halvorson, Knutson, Frank, John Olson, and Coolidge.

## I. BACKGROUND

Plaintiff was diagnosed with asthma in January 2003. By 2006, Plaintiff was treating his condition by taking one ten-milligram Prednisone pill daily. Additionally, by that time Plaintiff had learned, with the help of his doctor, that he was able to prevent asthma attacks by ingesting a 40-milligram Prednisone pill when he felt that an attack was imminent. Before learning to manage his asthma in this way, Plaintiff was taken to a hospital in an ambulance for emergency medical care related to asthma attacks on three or four different occasions. Plaintiff also uses an albuterol inhaler and albuterol delivered via use of a nebulizer[2] to treat his asthma symptoms.

At times relevant to this case, Sherburne County contracted with Fairview Health Services, Inc., to provide medical services, including operation of a medical clinic, for inmates in the Sherburne County Jail. Normally, a physician assistant was present at the jail clinic between 9:00 a.m. and 5:00 p.m., Monday through Friday, and a nurse or a medical assistant was available seven days per week from 7:00 a.m. to 10:30 p.m. Between 10:30 p.m. and 7:00 a.m., the on-duty sergeant—a corrections officer rather than a member of the clinic staff—was charged with making decisions about emergency medical care.

In January 2005, Plaintiff began serving a staggered sentence of 150 days in the Sherburne County Jail for driving while impaired (DWI). While in the jail in 2005, Plaintiff

---

*v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."), the Court addresses Plaintiff's constitutional claims in Eighth Amendment terms.

[2] A nebulizer is a device that mixes medicine with water vapor so that the medicine can be inhaled and delivered somewhat more effectively to a patient than if the medicine were delivered by a pocket inhaler.

2

suffered an asthma attack or experienced symptoms that indicated an attack was imminent, and a doctor or other medical professional at the jail treated Plaintiff with elevated dosages of Prednisone. The record contains few details regarding this incident.

Plaintiff was arrested on April 12, 2006, for a probation violation and DWI and was held in the Sherburne County Jail pending his trial. During this detention, Plaintiff was generally permitted to go to the jail medical clinic for nebulizer treatment whenever he asked, which was once or twice per day. Plaintiff's ten-milligram Prednisone pills were delivered via a daily "med pass." When Plaintiff slept through a med pass, he was permitted to go to the clinic to get his Prednisone there.[3]

On April 21, 2006, Plaintiff suffered an asthma attack at about 4:30 a.m. while in his cell. Plaintiff pressed an intercom button to request assistance, and within minutes Corrections Officers Evan Emmerich and John White arrived at Plaintiff's cell, where they found Plaintiff hunched over and experiencing difficulty breathing. Defendant Coolidge, a sergeant on the corrections staff and therefore the medical decision-maker, did not go to Plaintiff's cell but was in contact with Emmerich and White by phone or radio. Plaintiff requested nebulizer treatment, and Coolidge refused it, at least in part because Coolidge did not know how to use a nebulizer and because he did not know whether he had authority to administer such a treatment. Plaintiff also requested Prednisone but was not given any. Instead, Plaintiff used his albuterol inhaler

---

[3] Jail records appear to indicate that Plaintiff missed his Prednisone dose on April 20, 2006. However, Plaintiff's deposition testimony indicates that he never skipped his daily dose of Prednisone while in jail, and, in his memorandum, Plaintiff makes no argument that Halvorson, Knutson, Frank, John Olson, or Coolidge should be subject to liability for a missed dose of Prednisone.

3

between seven and ten times and was given oxygen by Emmerich and White. Plaintiff eventually recovered.[4]

Between April 21 and April 24, Plaintiff made daily trips to the jail clinic, and he told jail clinic staff about his April 21 asthma attack. During these visits to the clinic, Plaintiff requested increased Prednisone doses, asking clinic staff to call his doctor at a number Plaintiff supplied for an explanation, but Plaintiff's requests were denied. In addition, Plaintiff complained of shortness of breath and wheezing in his lungs and received nebulizer treatments. Plaintiff received one such nebulizer treatment at 9:45 p.m. on April 24, 2006. Clinic notes indicate that, after this treatment, Plaintiff's wheezing was better but still audible.

Early in the morning on April 25, 2006, Plaintiff sensed that an asthma attack was imminent. According to his deposition, Plaintiff used his albuterol inhaler approximately four times, with 15 minutes between each usage, and he then pressed the intercom button in his cell to summon help. Defendant Halvorson, a corrections officer, answered the intercom call and went to Plaintiff's cell within minutes. Coolidge arrived sometime thereafter. An oxygen tank was brought to the cell, and Coolidge or another corrections officer administered oxygen to Plaintiff. At some point, the oxygen tank was depleted and a different tank was substituted. Coolidge, who had learned to use a nebulizer following Plaintiff's asthma attack on April 21, offered Plaintiff nebulizer treatment, and Plaintiff refused. Plaintiff's deposition testimony indicates that he repeatedly asked for Prednisone and that he begged the officers to call 911. Coolidge called an ambulance at 3:42 a.m., and paramedics arrived at the jail at 3:57 a.m.

---

[4] According to the depositions of Emmerich and White, Plaintiff was on oxygen for ten minutes or less during the asthma attack. In his deposition, Plaintiff claims he received oxygen for several hours. In his memorandum, Plaintiff makes no argument regarding the duration of the episode.

The incident reports and deposition testimony of Coolidge and Halvorson indicate that Plaintiff activated his intercom button at approximately 3:30 a.m. The jail's intercom log, an electronic record of intercom activity, indicates that Plaintiff activated the intercom at 3:28:54 a.m. In contrast, in his deposition, Plaintiff stated that he pressed the intercom button "well before" 3:30 a.m. on April 25, and Plaintiff estimated that he was on oxygen for one to two hours before paramedics arrived. However, Plaintiff also testified—consistent with the intercom log and the incident reports and deposition testimony of Halvorson and Coolidge—that he first used his inhaler about four or five hours after his last nebulizer treatment, which had been administered at about 9:45 p.m. on April 24, as noted above.

After observing Plaintiff, the paramedics concluded that he should be transported to a hospital. They continued administering oxygen, and they delivered medicines to Plaintiff by both injection and nebulizer. Plaintiff's condition deteriorated as they moved him to the ambulance, and the paramedics began using an "Ambu bag and mask" to help Plaintiff breathe. The ambulance departed the jail at 4:48 a.m. Due to the grave nature of Plaintiff's condition, the ambulance was rerouted from its intended destination to a nearby hospital, arriving at 5:04 a.m. Plaintiff was intubated on the way to the hospital.

Dr. Linda Soucie treated Plaintiff at the hospital. Her affidavit, quoting the discharge report she drafted, states that Plaintiff arrived "'in respiratory failure triggered by allergens in his jail cell and inability to receive timely medical care.'" Her affidavit further states that Plaintiff's "presentation was not that of someone struggling to breathe over a short period of time" and suggests that he had been struggling for "a prolonged period of time." The affidavit states that Dr. Soucie believes that Plaintiff's asthma attack would have been prevented or its severity

would have been lessened had Plaintiff received higher daily doses of steroids following his April 21 attack and had he received emergency medical treatment earlier on April 25.

Plaintiff asserts claims of negligence and violation of his Eighth Amendment rights against Sherburne County; Coolidge; Halvorson; Knutson, the Jail Administrator; Frank, the Assistant Jail Administrator; John Olson, a supervisory official on the jail corrections staff; and various individuals associated with the jail clinic. Sherburne County, Coolidge, Halvorson, Knutson, Frank, and John Olson have moved for summary judgment. In his memorandum, Plaintiff states that he wishes to dismiss his claims against Halvorson; his negligence claims against Knutson, Frank, and John Olson; and his non-supervisory section 1983 claims against Knutson, Frank, and John Olson.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A. Eighth Amendment claims

"Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). A plaintiff may prove deliberate indifference by demonstrating that he or she had an objectively serious medical need, that jail officials knew of the need, and that the officials deliberately disregarded it. *Id.*; *see Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006) ("To find a prison official liable for showing deliberate indifference, we require the plaintiff to show that the official actually knew that the inmate faced a substantial risk of serious harm and failed to respond reasonably to abate that risk."). The subjective element of the deliberate indifference inquiry requires proof of a mental state akin to criminal recklessness, that is, that a defendant disregarded a known risk to the inmate's health. *Gordon*, 454 F.3d at 862. "Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." *Id.* In addition, a plaintiff must establish that any delay in delivering medical treatment had some detrimental effect. *See Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). If a plaintiff's allegations and the undisputed facts do not amount to a constitutional violation, qualified immunity applies and the claims must be dismissed. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007).

### 1. *Plaintiff's asthma attack on April 21, 2006*

Plaintiff argues that Coolidge exhibited deliberate indifference in violation of the Eighth Amendment in connection with Plaintiff's April 21 asthma attack when Coolidge did not personally assess Plaintiff after receiving reports that Plaintiff was having trouble breathing.

While Coolidge did not observe Plaintiff in his cell, he was in communication with corrections officers who were responding to Plaintiff's condition and carrying out Coolidge's orders. Plaintiff does not to identify any authority indicating that the Constitution required Coolidge to assess Plaintiff's condition in person. *Cf. Gordon*, 454 F.3d at 863-64 (indicating that a jail sergeant's reliance on subordinates who fail to take any action in response to a medical emergency may constitute deliberate indifference); *Pietrafeso v. Lawrence County*, 452 F.3d 978, 984 (8th Cir. 2006) (indicating that a jailor was not deliberately indifferent when he made flawed efforts to treat an inmate's asthma attack).

Plaintiff further argues that Coolidge exhibited deliberate indifference on April 21, 2006, when he denied nebulizer treatment to Plaintiff. *See Phillips v. Jasper County Jail*, 437 F.3d 791, 796 (8th Cir. 2006) ("[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference."). In *Pietrafeso*, the widow of a jail inmate sued Lawrence County, South Dakota, and several county officials, including a jail guard, alleging violation of the inmate's Eighth Amendment rights. 452 F.3d at 983-84. It was undisputed that the guard knew that the inmate "was a severe asthmatic with a constant need for medications." *Id.* at 983. At trial, it was established that, when the inmate told the guard that he needed to use a nebulizer, the guard initially brought a nebulizer without a mouthpiece, rendering the nebulizer unusable. *Id.* at 982-84. The guard returned with a mouthpiece, but neither the guard nor the inmate knew how to prepare the nebulizer solution. *Id.* The inmate eventually used a pre-mixed solution left in the nebulizer by a previous user, but by that time the inmate had entered asthmatic arrest. *Id.* The inmate was rushed to a hospital by ambulance and died shortly thereafter. *Id.* at 982. The Eighth Circuit affirmed the district court's order granting judgment as a matter of law to the

8

guard, stating that the guard's actions did not evidence deliberate indifference because he "was trying to treat the attack, not ignore it." *Id.* at 983-84.

In this case, while Coolidge denied Plaintiff nebulizer treatment during his asthma attack on April 21, he did so because he did not know how to use a nebulizer and was unaware he had the authority to administer such a treatment. Moreover, he was in contact with subordinates who were attempting to treat Plaintiff's condition by other means. Like the guard in *Pietrafeso*, Coolidge, though limited by his knowledge and abilities, was trying to treat Plaintiff's asthma attack rather than ignore it. The Court is sympathetic with Plaintiff's view that Coolidge's failure to administer nebulizer treatment to Plaintiff may have constituted a suboptimal response to Plaintiff's condition. However, under these circumstances, such failure did not constitute deliberate indifference within the meaning of the Eighth Amendment. *See Pietrafeso*, 452 F.3d at 983-84; *Williams v. Smith*, No. 5:04CV-94-R, 2006 WL 938980, at *1, *4 (W.D. Ky. Apr. 10, 2006) (concluding that a jail officer "did not have the necessary intent to meet the deliberate indifference standard" when he denied use of a nebulizer to an asthmatic inmate who was having trouble breathing but instead took other actions that evidenced a concern for the inmate's well-being); *cf. Phillips*, 437 F.3d at 795 (indicating that an inmate is not entitled to every treatment that he requests). Furthermore, Plaintiff fails to identify facts that would permit a reasonable jury to conclude that his April 21 asthma attack would have abated any sooner had he received nebulizer treatment because, among other things, Plaintiff identifies no evidence regarding how long it would have taken Coolidge to retrieve the nebulizer from the jail clinic and administer nebulizer treatment to Plaintiff.

Plaintiff argues that Coolidge violated his Eighth Amendment rights by failing to consult with a physician or to call for an ambulance during the April 21 asthma attack. Plaintiff

recovered from the April 21 episode in the absence of such actions by Coolidge. Even if it is assumed that the April 21 asthma attack was not only a serious medical condition but that the Eighth Amendment required Coolidge to consult a physician or call for an ambulance, *cf. Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) (indicating that asthma frequently is, but need not necessarily be, a serious medical condition), Plaintiff fails to identify facts that could permit a jury to conclude that the severity or duration of his April 21 asthma attack would have been reduced had Coolidge done so.

Finally, Plaintiff argues that Coolidge violated his Eighth Amendment rights by failing to discuss Plaintiff's April 21 asthma attack with jail clinic personnel after the incident. However, Plaintiff admits the he personally discussed his April 21 attack with jail clinic staff later that same day and in the days that followed. Because Plaintiff himself informed clinic staff of the asthma attack, Plaintiff cannot establish a genuine issue of material fact regarding whether failure of Coolidge to notify the jail clinic had a detrimental effect on Plaintiff. Accordingly, the Court concludes that Coolidge is entitled to summary judgment as to the specific claims Plaintiff makes regarding Coolidge's response to his asthma attack on April 21, 2006.

    2.    *Plaintiff's asthma attack on April 25, 2006*

Plaintiff argues that Coolidge exhibited deliberate indifference when he delayed in calling an ambulance during Plaintiff's asthma attack on April 25, 2006. While it is undisputed that an ambulance was called at 3:42 a.m., the parties disagree on when Plaintiff first pressed the intercom button in his cell to request aid: Defendants contend that Plaintiff activated the intercom at approximately 3:30 a.m., and Plaintiff asserts that he activated the intercom much earlier. Plaintiff argues that his version of events is supported by evidence regarding depletion of the first oxygen tank, Dr. Soucie's conclusion that Plaintiff appeared to have struggled to breathe

for "a prolonged period of time," and Plaintiff's own testimony that he received oxygen for one to two hours before paramedics arrived. Plaintiff contends that this evidence is sufficient to establish a genuine issue of material fact as to when Plaintiff pressed the intercom button and, as a result, as to how long Coolidge delayed before calling an ambulance. The Court must disagree.

When opposing a motion for summary judgment, the nonmoving party is entitled to the benefit of favorable inferences drawn from even weak and contradicted evidence. *See Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In this case, the jail intercom log and the deposition testimony and incident reports of Halvorson and Coolidge all indicate that Plaintiff pressed the intercom button in his cell at approximately 3:30 a.m. Significantly, the record establishes that entries in the intercom log are created automatically and cannot be altered by jail staff. Evidence regarding depletion of the first oxygen tank is meaningless in the absence of evidence about how full the tank was at the outset Plaintiff's April 25 asthma attack. The statements in Dr. Soucie's affidavit regarding the "prolonged" duration of Plaintiff's breathing troubles are too vague to be considered inconsistent with Plaintiff first activating the intercom at 3:30 a.m.: Plaintiff's testimony indicates that he experienced trouble breathing for 45 minutes to one hour before he requested help, and, even if he pressed the button at 3:30 a.m., it is undisputed at least another 90 minutes passed before Plaintiff arrived at the hospital where he could be observed by Dr. Soucie. Finally, Plaintiff's deposition testimony was contradictory, and he admitted that his testimony regarding passage of time was based on estimates he made without the benefit of a clock or a watch. Under these circumstances, the Court concludes that

no reasonable jury could credit Plaintiff's account regarding the length of Coolidge's delay in calling an ambulance and that the evidence establishes that Plaintiff pressed the intercom button in his cell at approximately 3:30 a.m. on April 25, 2006.

Plaintiff argues that even if he first pressed the intercom button at about 3:30 a.m., Coolidge exhibited deliberate indifference by waiting until 3:42 a.m. to call an ambulance. Delays in providing care as short as ten minutes may be sufficient to constitute deliberate indifference. *See Tlamka*, 244 F.3d at 633 ("[T]he corrections officers' alleged failure to even approach Tlamka during the maximum 10-minute period would rise to a showing of deliberate indifference [where Tlamka appeared to be having a heart attack]."). In this case, Coolidge did not delay in providing care, *see Pietrafeso*, 452 F.3d at 984, and no reasonable jury could conclude that Coolidge was deliberately indifferent to Plaintiff's medical condition when he waited until 3:42 a.m. to call an ambulance. Accordingly, the Court concludes that Coolidge is entitled to summary judgment as to the specific claims Plaintiff makes regarding any delay by Coolidge in calling an ambulance in response to Plaintiff's asthma attack on April 25, 2006.

### 3. *Violations of jail policies*

In addition to the specific alleged deficiencies related to Coolidge's response to Plaintiff's asthma attacks on April 21 and April 25, 2006, Plaintiff argues that Coolidge exhibited deliberate indifference by violating a variety of jail policies before, during, and after the asthma attacks. Plaintiff states that "repeated and widespread violations, especially as to emergency care, do [create constitutional liability]," but Plaintiff cites no authority for this proposition. To the contrary, violations of institutional policies do not, in themselves, constitute constitutional violations. *See Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988) ("[P]olice department guidelines do not create a constitutional right."); *cf. Davis v. Scherer*, 468 U.S. 183,

194 (1984) (rejecting proposed rule whereby defendants would lose qualified immunity if they violated a statute or regulations "designed to protect constitutional rights"). Because Plaintiff fails to explain how Coolidge's alleged violation of jail policies also violated the Constitution, the Court concludes that Coolidge is entitled to summary judgment on Plaintiff's Eighth Amendment claims based on Coolidge's alleged violations of jail policies.

   4. *Supervisory liability*

  Plaintiff argues that Knutson, Frank, John Olson, and Coolidge are liable for violations of Plaintiff's Eighth Amendment rights under a supervisory liability theory. Supervisory liability under section 1983 for an injury may attach if a supervisor received notice of a pattern of unconstitutional acts committed by subordinates, demonstrated deliberate indifference to or gave tacit authorization of unconstitutional acts, and failed to take sufficient remedial action. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996); *cf. Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) ("A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability."). In support of his claims regarding supervisory liability, Plaintiff relies on an alleged pattern of violations of jail policies. As discussed above, Plaintiff fails to establish that violations of jail policies also constitute violations of his constitutional rights. Accordingly, Knutson, Frank, John Olson, and Coolidge are entitled to summary judgment on Plaintiff's Eighth Amendment claims asserted against them in their supervisory capacities.

   5. Monell *liability*

  Plaintiff argues that he is entitled to recover from Sherburne County for violations of his Eighth Amendment rights. It is well-established that a governmental entity cannot be held liable under section 1983 on a respondeat superior theory, that is, merely because it employs a

tortfeasor. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Monell*, the Supreme Court held that municipalities and other local governmental entities could be sued under section 1983 only for the entity's unconstitutional or illegal policies or customs. *Id.* at 694. For a municipality to be liable under section 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.*

      i.      Inadequate staffing

Plaintiff argues that medical staffing policy at the Sherburne County Jail, which had 550 beds in April 2006, was inadequate. Plaintiff had regular contact with jail clinic staff in April 2006. In addition, corrections officers responded on both occasions that Plaintiff pressed the intercom button to request help, and Plaintiff cites no authority establishing that the jail was required to have medical staff on the premises at all times. Therefore, the Court concludes that a policy of inadequate staffing at the Sherburne County Jail cannot be said to have been the moving force behind the constitutional violations alleged by Plaintiff. *Cf. Foster v. Midwest Sec. Hous., LLC*, No. 05-06116, 2006 WL 89841 (W.D. Mo. Jan. 13, 2006) (indicating that "prolonged and deliberate inaction" by medical staff and corrections officers may establish that jail staffing was insufficient). Accordingly, Sherburne County is entitled to summary judgment on Plaintiff's claims for inadequate staffing.

      ii.      Violations of jail policies

Plaintiff argues that widespread violations of jail policies give rise to *Monell* liability against Sherburne County. As discussed above, Plaintiff does not establish that violations of jail policies also violate the Constitution. Accordingly, Sherburne County is entitled to summary judgment on Plaintiff's claims regarding alleged violations of jail policies.

        iii.        Inadequate training

Plaintiff argues that Sherburne County is subject to liability under *Monell* for a policy of inadequate training. Specifically, Plaintiff contends that Coolidge's training was insufficient given that, when he is on duty between 10:30 p.m. and 7:00 a.m., he acts as the decision-maker regarding medical emergencies.

To prevail on a failure to train theory, a plaintiff must demonstrate that a defendant's failure to train its employees in some relevant respect evidences deliberate indifference to the constitutional rights of others, which requires a showing of notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *Thelma D. ex rel. Delores A. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991). In examining whether certain training is adequate, a court should focus "on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In her affidavit, Knutson states that all jail staff were required to participate in an initial four-week-long training program that included certification in first aid and CPR. Knutson further states that all staff must be certified in first aid and CPR and that Sherburne County provides periodic refresher courses. In his deposition, John Olson, a former EMT, testified that he supplements the jail's general training program with lessons in dealing with common health-related jail "scenarios," including inmate asthma issues. John Olson further testified that he provided additional training in how to recognize medical emergencies to every sergeant. Finally, Coolidge was trained in how to use a nebulizer sometime between April 21 and April 25, 2006.

While Coolidge's deposition testimony indicates that he did not recall much of this training, a court must focus on the training policy itself and on not any individual trainee's recollections. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).

15

Neither Coolidge's training nor training of jail sergeants more generally was obviously inadequate, and Plaintiff does not identify authority indicating that this training was deficient. *Cf. Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) ("[B]oth [jailers] were trained in the Basic Jail Standards Training Course. Appellant has advanced no evidence or case law that this training was deliberately indifferent to Grayson's rights, and we decline to hold Sheriff Ross liable in his official capacity."); *Jennings*, 397 F.3d at 1123 ("[E]ffective training need not specifically address every conceivable situation an employee may encounter."); *Tucker v. Evans*, 276 F.3d 999, 1003 (8th Cir. 2002) ("It is undisputed that Daniels completed a six-week training course at the Arkansas Department of Correction Training Academy as well as on-the-job training. There was no violation of clearly established law in the training of Daniels, and thus the claim is without merit."). Accordingly, Sherburne County is entitled to summary judgment on Plaintiff's claims regarding inadequate training.

**B.    Negligence claims**

Plaintiff argues that Coolidge is liable for state-law negligence "[f]or the same reasons that Sgt. Coolidge was deliberately indifferent to [Plaintiff]'s serious medical needs." Plaintiff further argues that Sherburne County is liable for Coolidge's negligence under the doctrine of respondeat superior. *See* Minn. Stat. § 466.02 (2008); *Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 583 (Minn. 2008). Sherburne County and Coolidge assert that they are protected by official immunity.

Official immunity is a common-law doctrine that provides public officials with a defense to state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006); *cf. Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996) (stating that a government entity is not liable for an employee's act when the employee is protected by official

immunity). Under Minnesota law, officials are generally entitled to official immunity unless the plaintiff shows: "1) a ministerial duty is either not performed or is performed negligently, or 2) . . . a willful or malicious wrong is committed." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006). The nature of the duties or conduct at issue determines whether they are ministerial or discretionary. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). A ministerial duty is "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (quotation marks omitted). The existence of a written policy "does not transform an otherwise discretionary act into a ministerial one." *Bailey v. City of St. Paul*, 678 N.W.2d 697, 702 (Minn. Ct. App. 2004). To the contrary, "[f]ield-level actions taken by public officials may be discretionary even when there are extensive regulations that dictate procedure." *Id*. A written policy establishes a ministerial duty if it creates "a sufficiently narrow standard of conduct" that public officials are "bound to follow." *Mumm*, 708 N.W.2d at 491.

Plaintiff does not argue that Coolidge's actions were willful or malicious. Instead, Plaintiff identifies two alleged violations of jail policy that he claims should prevent Coolidge and Sherburne County from benefiting from official immunity. First, Plaintiff argues that Coolidge violated the jail's "Standing Orders for Administering Oxygen" when he failed to contact medical personnel after oxygen was administered to Plaintiff on April 21, 2006, and Plaintiff contends that Coolidge's failure to contact medical personnel prevented Plaintiff from obtaining treatment that would have helped him avoid his asthma attack on April 25, 2006. As discussed above, Plaintiff admits the he personally discussed his April 21 asthma attack with jail clinic staff later that same day and in the days that followed. As a result, Coolidge's failure to contact medical personnel after administering oxygen to Plaintiff cannot be considered to have

17

caused Plaintiff to receive inadequate medical care between April 21 and April 25, 2006, regardless of whether that failure constituted violation of a ministerial duty.

Second, Plaintiff contends that, in connection with his asthma attack on April 21, 2006, Coolidge violated the jail's "Emergency Medical Treatment" policy, which states that "the jail sergeant shall assess the situation" if clinic staff is unavailable and an ambulance need not be called immediately. However, the policy does not specify that a jail sergeant must attend to an inmate in person, and the evidence establishes that Coolidge assessed the situation remotely after receiving information about Plaintiff from corrections officers who were responding to Plaintiff's condition. *Cf. Gordon*, 454 F.3d at 865-66 (indicating that a jail sergeant violated a similar policy where he relied on subordinates who made no efforts to examine or attend to an obviously ill inmate). Even if it is assumed that Coolidge was required to personally observe Plaintiff, Plaintiff fails to establish a genuine issue of material fact as to whether Coolidge's failure to do so had any adverse effect on Plaintiff. Finally, the policy does not define the term "emergency," and the policy provision at issue applies only when "the situation does not warrant that an ambulance needs to be dispatched to the jail immediately." Because it does not create a specific duty arising from fixed and designated facts, any duty created by this particular portion of the Emergency Medical Treatment policy cannot be considered ministerial such that failure to follow it would preclude Coolidge from asserting official immunity.

Plaintiff makes no other specific argument regarding official immunity. In general, "the duties of [public officials] in emergency situations require the exercise of significant independent judgment and discretion" such that official immunity is appropriate. *In re Sloan*, 729 N.W.2d 626, 630 (Minn. Ct. App. 2007). This case is no exception. Accordingly, Coolidge's alleged violation of the jail's "Standing Orders for Administering Oxygen" did not cause the injury of

which Plaintiff complains, and the record establishes that Coolidge and Sherburne County are otherwise entitled to the protection of official immunity. Plaintiff's negligence claims are dismissed.

### III. CONCLUSION

Plaintiff's claims against Halvorson, Knutson, Frank, John Olson, and Coolidge must be dismissed for the reasons discussed above. Similarly, Plaintiff's Eighth Amendment and negligence claims against Sherburne County related to the conduct of Halvorson, Knutson, Frank, John Olson, and Coolidge must be dismissed. However, because Sherburne County may potentially be subject to liability in connection with Plaintiff's claims against the remaining Defendants—claims not at issue in the present motion—Sherburne County must continue as a party to the lawsuit. *See West v. Atkins*, 487 U.S. 42, 56 (1988).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The summary judgment motion of Defendants Sherburne County, Halvorson, Knutson, Frank, John Olson, and Coolidge [Docket No. 65] is GRANTED.

2. Plaintiff's claims against Defendants Halvorson, Knutson, Frank, John Olson, and Coolidge are DISMISSED WITH PREJUDICE.

3. Plaintiff's claims against Defendant Sherburne County based on the conduct of Halvorson, Knutson, Frank, John Olson, and Coolidge are DISMISSED WITH PREJUDICE.

Dated: June 22, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge