UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jay Paul Olson,

   Plaintiff,

v.                    Civil No. 07-4757 (JNE/JJG)
                     ORDER

Sherburne County, Angela Knutson, Brian
Frank, John Olson, Jeremy Coolidge, Troy
Halvorson, Maryanne Welsh, Mark
Herrmann, Rose Lindberg-Maingi, Tricia
Nesser, and Gregory Schoen,

   Defendants.

Robert Bennett, Esq., and Ryan O. Vettleson, Esq., Flynn, Gaskins & Bennett, LLP, appeared for Plaintiff Jay Paul Olson.

William J. Everett, Esq., and Daniel P. Kurtz, Esq., Everett & Vanderwiel, PLLP, appeared for Defendant Sherburne County.

Barry G. Vermeer, Esq., and Henry A. Parkhurst, Esq., Gislason & Hunter, LLP, appeared for Maryanne Welsh, Mark Herrmann, Rose Lindberg-Maingi, Tricia Nesser, and Gregory Schoen.

  Plaintiff Jay Paul Olson brought this action on December 4, 2007, in response to the treatment he received for his asthma while incarcerated in the Sherburne County Jail (Jail). The original complaint asserted claims pursuant to 42 U.S.C. § 1983 (2006) and for negligence against Sherburne County (County), as well as Jail employees Angela Knutson, Brian Frank, John Olson, Jeremy Coolidge, Troy Halvorson (collectively, Jail Staff Defendants), and "John Does Nos. 1-5" in their individual capacities. In December 2008, the magistrate judge granted in part Plaintiff's motion to amend the complaint, permitting Plaintiff to add the following employees of Fairview Health Services, Inc., all of whom had some role in the provision of medical care in the Jail: Maryanne Welsh, Mark Herrmann, Rose Lindberg-Maingi, Tricia Nesser, and Dr. Gregory Schoen (collectively, Clinic Defendants). The County and Jail Staff

1

Defendants moved for summary judgment on January 8, 2009. On January 28, 2009, the Court affirmed the magistrate judge's order granting in part Plaintiff's motion to amend. On March 26, 2009, the parties stipulated to an amended complaint, which was filed on March 31, 2009. In addition to the claims against the County and Jail Staff Defendants, the Amended Complaint asserted § 1983 claims against the Clinic Defendants. The Clinic Defendants moved for summary judgment on June 9, 2009. On June 22, 2009, the Court granted summary judgment in favor of the County and Jail Staff Defendants, and dismissed with prejudice all claims against the Jail Staff Defendants as well as the claims against the County that were based on their conduct. (*See* Docket No. 118.) The June 22 Order noted that the claims against the County based on the Clinic Defendants' conduct remained outstanding. The County moved for summary judgment on those claims on August 31, 2009. For the reasons discussed below, the Court grants in part and denies in part the Clinic Defendants' summary judgment motion and grants the County's August 31 motion.

## I.     BACKGROUND

Plaintiff was diagnosed with asthma in January 2003. By 2006, Plaintiff was treating his condition with an albuterol inhaler, albuterol delivered by a nebulizer,[1] and by taking one ten-milligram Prednisone pill daily. Additionally, by that time Plaintiff had learned that he was able to prevent asthma attacks through a "Prednisone burst," which consisted of ingesting 40 milligrams of Prednisone when he felt that an attack was forthcoming and then tapering that dose back to 10 milligrams. Plaintiff developed this treatment in consultation with his doctor but did not have a specific prescription for the Prednisone burst. Before learning to manage his asthma

---

[1] A nebulizer is a device that mixes medicine with water vapor so that the medicine can be inhaled and delivered more effectively to a patient than if the medicine were delivered by a pocket inhaler.

2

in this manner, Plaintiff was taken to a hospital in an ambulance for emergency medical care related to asthma attacks on three or four different occasions.

At all times relevant to this case, the County contracted with Fairview Health Services, Inc., to provide medical services, including operation of a medical clinic (Clinic), for inmates in the Jail. Schoen served as the medical director of the Clinic. In that capacity, Schoen was responsible for the policies and procedures for care at the Clinic and directly supervised a physician assistant who was in charge of the day-to-day operation of the Clinic. Schoen worked onsite at the Clinic for only one half-day each month. A physician assistant was typically at the Clinic between 9:00 a.m. and 5:00 p.m., Monday through Friday, and a registered nurse or a licensed practical nurse was available seven days per week from 7:00 a.m. to 10:30 p.m. Between 10:30 p.m. and 7:00 a.m., the on-duty sergeant—a corrections officer rather than a member of the Clinic staff—was charged with making decisions about emergency medical care. Clinic staff delivered medications daily to the Jail inmates. Jail policy required inmates who wanted to be seen in the Clinic or who desired additional medication to submit a request-to-be-seen form to the Clinic staff when they were delivering medications. Only Schoen or a physician assistant could prescribe medications to inmates seen in the Clinic.

In January 2005, Plaintiff began serving a staggered sentence of 150 days in the Jail for driving while impaired (DWI). During his 2005 incarceration, Plaintiff experienced symptoms that indicated an attack was forthcoming. Michael King, the Clinic's physician assistant at the time, successfully treated Plaintiff with a Prednisone burst. This incident was documented in Plaintiff's medical records in the Clinic.

Plaintiff was again detained in the Jail in March 2006. The Clinic notes on March 16, 2006, indicated that Plaintiff normally took 10 milligrams of Prednisone daily but in the past had

3

needed a Prednisone burst to avoid an asthma attack. The notes also mentioned that Plaintiff had not taken Prednisone for three days, that he was using his inhaler more frequently, and that he had noticed increasing difficulty breathing. Between March 18 and March 30, the Clinic notes reflected that Plaintiff received a daily nebulizer treatment in the Clinic for shortness of breath or wheezing in his lungs and that the treatments improved his breathing and cleared the wheezing. Plaintiff's vital signs were charted only on March 16, 18, and 20, and the Clinic notes did not identify requests for additional Prednisone by Plaintiff. Plaintiff appears to have been released from the Jail at the end of March.

Plaintiff returned to the Jail in mid-April 2006 due to a probation violation and DWI. Clinic notes on April 13 indicated that Nesser, the Clinic's physician assistant at the time, ordered an albuterol inhaler, nebulizer treatments for shortness of breath, and a daily 10-milligram tablet of Prednisone for Plaintiff. According to Plaintiff, after returning to the Jail in April, he received 10 milligrams of Prednisone and went to the Clinic for nebulizer treatments daily. During that time, the corrections officers permitted Plaintiff to go to the Clinic for nebulizer treatments upon oral request alone without submitting a request-to-be-seen form.[2]

After opening a moldy book on April 21, Plaintiff suffered an asthma attack at about 4:30 a.m. while in his cell. Plaintiff pressed an intercom button to request assistance, and within minutes corrections officers arrived at his cell and found him hunched over and experiencing difficulty breathing. The officers did not give Plaintiff a nebulizer treatment and refused his request for Prednisone. Plaintiff recovered after using his albuterol inhaler multiple times and receiving oxygen from the corrections officers. The officers did not directly inform the Clinic of Plaintiff's asthma attack but told him to go to the Clinic when it opened.

---

[2] The record contains examples of Plaintiff's use of a request-to-be-seen form for issues other than nebulizer treatments.

4

The Clinic notes on April 21 indicated that Plaintiff arrived in the Clinic at 9:15 p.m. with wheezing in the left upper and lower lobes of his lungs. Welsh, a licensed practical nurse, administered the nebulizer treatment and noted that it cleared Plaintiff's lungs and gave "good relief." Lindberg-Maingi, a registered nurse, signed the Clinic notes but documented nothing. Plaintiff was seen by Lindberg-Maingi on April 22 at 9:45 p.m. Lindberg-Maingi documented that Plaintiff was experiencing wheezing in all lobes in both lungs and the wheezing could be heard when talking to him. After administering the nebulizer treatment, Lindberg-Maingi noted that Plaintiff's lungs were clear and the treatment gave "good relief." Plaintiff arrived at the Clinic on April 23 at 9:45 p.m. with wheezing in his lungs and received a nebulizer treatment from Welsh. Welsh noted that the treatment cleared Plaintiff's lung sounds. Contrary to the Clinic notes on April 21 through April 23, however, Plaintiff testified that his wheezing, while eased by the nebulizer treatments, was "never gone to where [he] would be breathing freely." Plaintiff also testified that his condition was progressively worsening.

On April 24, Plaintiff was seen in the Clinic at 9:45 p.m. by Herrmann, a licensed practical nurse. Herrmann administered the nebulizer treatment, documented that Plaintiff's wheezing was "somewhat diminished but still audible," and notified Lindberg-Maingi. Lindberg-Maingi assessed Plaintiff but documented nothing in his chart. She testified at her deposition that a "wheeze after nebs" was acceptable and that documentation was unnecessary when everything was "within normal limits."

The Clinic notes dated April 21 through April 24 do not refer to Plaintiff's April 21 asthma attack, identify any requests for more Prednisone, or indicate that Plaintiff's vital signs were taken. According to Plaintiff, however, every time he received a nebulizer treatment he informed the Clinic staff member administering the treatment that the treatments only helped

5

temporarily and that he needed more Prednisone. He allegedly gave the Clinic staff his doctor's name and phone number, informed them that his doctor had prescribed the Prednisone burst, and told them about the 2005 incident in which King successfully treated him with a Prednisone burst. Plaintiff also testified that he told Clinic staff about his April 21 incident when he visited the Clinic that same evening,[3] and that he "begged" for more Prednisone on every Clinic visit thereafter.[4] Welsh, Lindberg-Maingi, and Herrmann allegedly denied or ignored Plaintiff's requests for more Prednisone, did not tell him that he needed to fill out a particular form to request additional medication, and did not tell him that they were unable to prescribe medications.

Early in the morning on April 25, Plaintiff suffered another asthma attack and had to be taken by ambulance to the hospital. Dr. Linda Soucie treated Plaintiff at the hospital. Her affidavit, quoting the discharge report she drafted, stated that Plaintiff arrived "'in respiratory failure triggered by allergens in his jail cell and inability to receive timely medical care.'" Her affidavit further noted that Plaintiff's "presentation was not that of someone struggling to breathe over a short period of time" and suggested that he had been struggling for "a prolonged length of

---

[3] Plaintiff was seen by Welsh and Lindberg-Maingi on April 21 but he did not identify who he told about the asthma attack.

[4] Defendants argue that Plaintiff's testimony about requesting more Prednisone is "dubious at best" because he submitted a request-to-be-seen form on April 22 that did not mention additional Prednisone but indicated that he needed to see someone in the Clinic about a work program available to medically-cleared inmates. Moreover, in response to questioning about this form at his deposition, Plaintiff testified that on April 22 "the amount [of Prednisone] they were giving [him] daily was [apparently] working." "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Despite the apparent inconsistency in Plaintiff's testimony, the Court determines that it is not blatantly contradicted by the record and accepts that Plaintiff requested more Prednisone every time he was in the Clinic for a nebulizer treatment. It will be for a jury to assess Plaintiff's credibility.

time." Soucie also attested that Plaintiff's asthma attack would have been prevented or its severity would have been lessened had Plaintiff received higher daily doses of steroids following his April 21 attack and had he received emergency medical treatment earlier on April 25.

The amended complaint asserts direct liability claims pursuant to § 1983 against all of the Clinic Defendants for violating the Eighth Amendment and supervisory liability claims against Nesser and Schoen.[5] Plaintiff stated in his memorandum that he wishes to voluntarily dismiss his direct liability claims against Schoen and Nesser.

## I.   DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[5]   Although it is unclear whether Plaintiff was being detained as an inmate or a pretrial detainee in April 2006, the parties agree that the Eighth Amendment deliberate indifference standard is appropriate. Because the standard is the same in either case, *see Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."), the Court addresses Plaintiff's constitutional claims under the Eighth Amendment.

7

### A.     Clinic Defendants

#### *1.     Direct liability*

Plaintiff argues that between April 21 and April 24, Welsh, Lindberg-Maingi, and Herrmann were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. "Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "An official who is deliberately indifferent to a prisoner's medical needs is subject to suit under § 1983." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009). "A prima facie case alleging such deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (citations omitted). Deliberate indifference is akin to criminal recklessness, in which "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Pietrafeso v. Lawrence County*, 452 F.3d 978, 982-83 (8th Cir. 2006) (quotation marks omitted). Claims against a prison medical official ordinarily challenge the official's treatment or lack of treatment of a plaintiff. *See, e.g.*, *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499-500 (8th Cir. 2008); *Bender v. Regier*, 385 F.3d 1133, 1137-38 (8th Cir. 2004). In such cases, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *see also Pietrafeso*, 452 F.3d at 983 (deliberate indifference requires more than gross negligence or disagreement with treatment decisions). In other cases, the medical professional acts as a gatekeeper to additional medical personnel

capable of providing the required care. *Sealock*, 218 F.3d at 1211. Delaying or refusing "to fulfill that gatekeeper role due to deliberate indifference" violates the Eighth Amendment. *Id.*

The Court first turns to the medical care provided by Welsh, Lindberg-Maingi, and Herrmann. It is undisputed that Plaintiff was never denied his prescribed 10-milligram dose of Prednisone and that Welsh, Lindberg-Maingi, and Herrmann always properly administered the nebulizer treatments upon Plaintiff's request. Welsh, Lindberg-Maingi, and Herrmann were not authorized to prescribe additional Prednisone to Plaintiff, and the only facts supporting their provision of inadequate medical care are their failure to take Plaintiff's vital signs every time he visited the Clinic and to properly chart their interactions with Plaintiff. In light of the actual care provided by Welsh, Lindberg-Maingi, and Herrmann, the Court determines that the alleged deficiencies in their medical care do not support a finding that they deliberately disregarded Plaintiff's serious medical need.

Whether Welsh, Lindberg-Maingi, and Herrmann were deliberately indifferent in their gatekeeper roles by allegedly ignoring or refusing Plaintiff's requests for more Prednisone and failing to direct him to the proper method for requesting medication presents a different question. For purposes of this motion, the Court accepts that Welsh and Lindberg-Maingi knew about Plaintiff's asthma attack on April 21; that Plaintiff requested additional Prednisone from Welsh, Lindberg-Maingi, and Herrmann between April 21 and 24; that Plaintiff told Welsh, Lindberg-Maingi, and Herrmann that his doctor authorized the Prednisone burst; that Welsh, Lindberg-Maingi, and Herrmann had access to the name and phone number of Plaintiff's doctor; that Welsh, Lindberg-Maingi, and Herrmann knew that a Prednisone burst worked while Plaintiff was incarcerated in the Jail in 2005; and that the nebulizer treatments between April 21 and April 24 improved Plaintiff's breathing but did not eliminate the wheezing. The Court determines that

9

these facts, if established, support a conclusion that Welsh, Lindberg-Maingi, and Herrmann knew of facts permitting an inference of a substantial risk of serious harm (i.e., an asthma attack) and that they actually drew the inference that such a risk existed. *See Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) ("The factual determination that a prison official had the requisite knowledge of a substantial risk may be inferred from circumstantial evidence or from the very fact that the risk was obvious."). Indeed, Lindberg-Maingi testified that had she known of the April 21 incident—and the Court assumes for purposes of this motion that she did—she would have been more concerned about Plaintiff's symptoms. *See Sealock*, 218 F.3d at 1212 ("If [the physician assistant] did know about the chest pain, by his own testimony he may have been deliberately indifferent in failing to summon the ambulance."). Moreover, Plaintiff's expert, Dr. Lawrence Mendel, attested that "[s]tandard medical practice, published medical protocols and [Clinic] policy dictate[d] that a [doctor or physician assistant] be notified to consider treatment changes" if wheezing persisted after a nebulizer treatment.[6] *See Mata v. Saiz*, 427 F.3d 745, 756 (10th Cir. 2005) (stating that a licensed practical nurse "refused to perform her gatekeeping role in a potential cardiac emergency by not seeking a medical evaluation of [the inmate] from either

---

[6] The Clinic Defendants argue that Mendel's affidavit is inadmissible because he bases his opinion on the violation of "irrelevant" Clinic and Jail policies and offers a legal conclusion. The policies, however, are relevant to the extent that Plaintiff identifies how they support a constitutional violation. *See Olson v. Sherburne County*, Civil No. 07-4757, 2009 U.S. Dist. LEXIS 52526, at *20 (D. Minn. June 22, 2009) (citing *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988)). Thus, the Court considers Mendel's affidavit to the extent he used the alleged violation of internal policies to support his conclusion that it was improper not to notify a doctor or physician assistant when Plaintiff's wheezing persisted after administration of the nebulizer treatments. This conclusion supports a finding of deliberate indifference but does not alone establish deliberate indifference. The Court, however, disregards Mendel's affidavit to the extent that it purports to offer a legal conclusion on the ultimate deliberate indifference inquiry. *See Schmidt v. Magyari*, 557 F.3d 564, 570 (8th Cir. 2009) (noting experts not permitted to offer legal conclusions).

a physician, physician assistant, or nurse practitioner" as required by the correctional institute's policy and "well-established standards of nursing care").

The next issue is whether Welsh, Lindberg-Maingi, and Herrmann acted with indifference to the substantial risk that Plaintiff would suffer an asthma attack. Welsh and Lindberg-Maingi allegedly did nothing in response to Plaintiff's post-nebulizer-treatment wheezing and his requests for more Prednisone. Such inaction, if proved, supports a finding of indifference. In contrast, in response to Plaintiff's persistent wheezing after receiving the nebulizer treatment on April 24, Herrmann, a licensed practical nurse, referred Plaintiff to Lindberg-Maingi, a registered nurse, for further assessment. Herrmann's referral to a superior precludes Plaintiff's claim that Herrmann acted with indifference. *See Mata*, 427 F.3d at 759 (finding that registered nurse fulfilled gatekeeper duties by referring plaintiff to nurse practitioner). Therefore, the Court denies summary judgment to Welsh and Lindberg-Maingi but grants summary judgment to Herrmann.

  2.  *Supervisory liability*

Plaintiff contends that Nesser and Schoen exhibited deliberate indifference in their supervisory capacities by abdicating their policymaking and oversight responsibilities. Supervisory liability is limited in § 1983 actions. *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003). Liability of a supervisor cannot be established under a theory of respondeat superior. *Id.* Rather, a supervisor is liable under § 1983 if she "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). "A failure-to-supervise claim may be maintained only if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." *Kahle v. Leonard*, 477 F.3d

11

544, 550 (8th Cir. 2007) (quotation marks omitted). "This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078. Supervisory liability, however, will ordinarily not be imposed based upon a "single incident, or a series of isolated incidents." *Howard v. Adkinson*, 887 F.2d 134, 138 (8th Cir. 1989).

Plaintiff supports his claims against Nesser and Schoen with allegations of the Clinic staff's failure to adequately chart a patient's medical care and violations of the Jail's asthma policy and other policies related to the use of an oxygen tank and communications between the Clinic and Jail. Plaintiff argues that these violations "were so widespread . . . that Nesser and Schoen must have known of them." Other than the limited allegations specific to this case, however, Plaintiff has produced no evidence that Nesser and Schoen were on notice that inmates' requests for additional medication were being refused or ignored, or that access to proper medical care was otherwise being denied. The absence of such evidence in this case precludes a finding of deliberate indifference.[7] Therefore, summary judgment in favor of Nesser and Schoen is warranted.[8]

---

[7] Plaintiff also asserts that "Nesser's failure to take any precautionary measures to monitor [his] care despite knowing the severity of his condition further demonstrates that she was deliberately indifferent to [his] serious medical needs in her supervisory capacity." This argument fails, however, because no evidence suggests that Nesser knew of the severity of Plaintiff's condition between April 21 and April 24 or knew that his requests for more Prednisone were being refused or ignored. *See Nelson v. Corr. Med. Servs.*, --- F.3d ---, No. 07-2481, 2009 U.S. App. LEXIS 21730, at *33-34 (8th Cir. Oct. 2, 2009) (en banc) (finding no § 1983 deliberate indifference claim against supervisor in part because no personal involvement in constitutional violation). Furthermore, although Plaintiff argues that Nesser and Schoen abdicated their policymaking roles, he does not identify any inadequate policies. Finally, because Plaintiff does not expressly argue that Nesser and Schoen are liable under a failure-to-train theory, the Court does not address such a claim.

[8] The Clinic Defendants acknowledge that private jail clinic employees are not entitled to the same qualified immunity protections as public employees. *See Harrison v. Ash*, 539 F.3d

**B.     The County**

Plaintiff argues that he is entitled to recover from the County for violation of his Eighth Amendment rights because the County failed to train or supervise the Clinic Defendants. Like supervisors, municipalities are not vicariously liable for constitutional violations under § 1983. *Andrews*, 98 F.3d at 1074 (relying on *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Rather, a plaintiff must show that a municipal policy or custom was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694. A municipality remains subject to liability if its failure to adequately train or supervise medical personnel was the moving force behind a constitutional violation even though the medical personnel were employed by an independent contractor. *Cf. Crooks v. Nix*, 872 F.2d 800, 803-04 (8th Cir. 1989) (upholding supervisory liability claims against prison warden and correctional director stemming from alleged inadequate provision of medical care by hospital staff working under contract with department of corrections).

To establish municipal liability under a failure-to-train theory, Plaintiff must show that "'the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County] can reasonably be said to have been deliberately indifferent to the need.'" *Andrews*, 98 F.3d at 1076 (quoting *City*

---

510, 525 (6th Cir. 2008) (refusing to extend qualified immunity to nurses employed by private medical provider); *Hinson v. Edmond*, 192 F.3d 1342, 1345-47 (11th Cir. 1999) (refusing to extend qualified immunity to privately employed prison physician). Nevertheless, the Clinic Defendants argue that they are entitled to qualified immunity to the extent that their alleged unconstitutional actions arose from adherence to the Jail policy requiring inmates to request medication using request-to-be-seen forms. *Cf. Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (permitting private entity to assert qualified immunity because of closely-monitored, non-profit interrelationship with public entity). Assuming qualified immunity applies in such circumstances, the constitutional violations in this case arise from Welsh's and Lindberg-Maingi's alleged failures to respond to Plaintiff's substantial risk of experiencing an asthma attack. Such conduct does not arise from the Jail policy, and qualified immunity does not apply.

*of Canton v. Harris*, 489 U.S. 378, 390 (1989)). In analyzing the County's liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390. Plaintiff maintains that the Clinic Defendants' ignorance of or refusal to follow certain Jail policies and their failure to "follow basic medical principles" with respect to charting patients and treating asthmatics establishes that the County's training was inadequate. Plaintiff, however, has not brought forth evidence specific to the County's training, or lack thereof, of the Clinic staff.[9] The absence of such evidence is fatal to Plaintiff's claim. *See Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (granting summary judgment where no evidence presented about city's "training and supervision or its relation to the tasks that the officers performed").

Plaintiff bases his failure-to-supervise claim on the County's "custom" of failing to supervise the Clinic staff. To establish the existence of such a custom, Plaintiff must show, among other things, the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [Clinic staff]." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quotation marks omitted). Plaintiff asserts that the Clinic staff's disregard of Jail policies "designed to safeguard inmates' constitutional right to emergency medical care" and the failure to follow basic medical principles support a finding of an unconstitutional custom. However, aside from Welsh's and Lindberg-Maingi's alleged unconstitutional conduct, Plaintiff

---

[9] Plaintiff, citing *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992), urges the Court to rely on the conclusion of his expert, Mendel, that "[t]here was a prevalent pattern and practice of failing to follow basic medical principles, common sense, and the jail asthma policy that was not monitored or enforced by the clinic supervisors" as evidence of the County's failure to provide adequate training. Unlike *Russo*, where the expert specifically reviewed the training offered by the city and opined on its adequacy, Mendel's affidavit does not comment on deficiencies in the County's training or indicate that he reviewed the County's training regimen. *See id.* at 1046-47. Consequently, Mendel's affidavit does not support Plaintiff's failure-to-train claim.

14

has not shown that violations of Jail policies or basic medical principles ever resulted in a constitutional violation by Clinic staff. Plaintiff's claim fails without such evidence. *See Mettler*, 165 F.3d at 1205 ("A single incident normally does not suffice to prove the existence of a municipal custom."). Accordingly, the Court grants summary judgment in favor of the County.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Clinic Defendants' Motion for Summary Judgment [Docket No. 112] is GRANTED as to Herrmann, Nesser, and Schoen.

2. Plaintiff's claims against Herrmann, Nesser, and Schoen are DISMISSED WITH PREJUDICE.

3. The Clinic Defendants' Motion for Summary Judgment [Docket No. 112] is DENIED as to Welsh and Lindberg-Maingi.

4. The County's Motion for Summary Judgment [Docket No. 133] is GRANTED.

5. Plaintiff's claims against the County are DISMISSED WITH PREJUDICE.

Dated: November 3, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge